970 So.2d 964 (2007)
In re Robert E. PATRICK.
No. 2007-B-1222.
Supreme Court of Louisiana.
December 14, 2007.

*965 ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Robert E. Patrick, a disbarred attorney.

PRIOR DISCIPLINE
Before we address the current charges, we find it helpful to review respondent's disciplinary history since he was admitted to the practice of law in Louisiana in 1983.
In 1991, respondent was admonished by the disciplinary board for the improper use of his client trust account. In 1995, the board admonished respondent for incompetence, failure to communicate with a client, and assessing an improper fee.
In September 1995, we suspended respondent from the practice of law for ninety days, fully deferred, for providing inaccurate information to clients and to courts in two criminal matters. In re: Patrick, 95-1621 (La.9/15/95), 600 So.2d 433.
In March 1999, we placed respondent on interim suspension for threat of harm to the public. In re: Patrick, 99-0410 (La.3/24/99), 733 So.2d 1180. In July 1999, we disbarred respondent. In re: Patrick, 99-0771 (La.7/2/99), 738 So.2d 539 ("Patrick I"). Respondent's misconduct in Patrick I included commingling and conversion of client funds and submission of false evidence in an attempt to cover up his wrongdoing. Respondent has not sought readmission from his 1999 disbarment.[1]
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.

FORMAL CHARGES
In 2004, the ODC filed four counts of formal charges against respondent, the second of which involved respondent's failure to refund an unearned fee. Following a hearing, the hearing committee concluded that the ODC did not carry its burden of proving by clear and convincing evidence the misconduct alleged in the second count of the formal charges. The disciplinary board agreed with this finding and *966 recommended that Count II be dismissed. The ODC did not object to the board's recommendation as it pertains to the dismissal of Count II, and accordingly, the issues relating to Count II are not discussed herein.

Count IThe Smith Matter
In September 1998, Corinthian Smith retained respondent to represent his seventeen-year old daughter, Nicole Smith, who had been issued a misdemeanor summons after she attempted to use her mother's driver's license to enter a casino in Lake Charles. Based upon respondent's misrepresentation to Mr. Smith that the charge against Nicole was a felony, Mr. Smith agreed to pay respondent $2,500 to handle the matter. Of the sum paid by Mr. Smith, $2,000 represented respondent's attorney's fees for defending the "felony" charge, with the remaining $500 to cover court costs and the fees associated with expungement. Respondent performed no work on Nicole's behalf other than accompanying her to the Sulphur City Court for arraignment, where in accordance with standard practice she pled guilty and was fined $100. The fine and court costs were paid by Mr. Smith, and were not taken from the cost funds previously paid to respondent for that purpose.
The ODC alleges that respondent's conduct in the Smith matter violated the following provisions of the Rules of Professional Conduct: Rules 1.5 (fee arrangements) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Counts III and IVThe Unauthorized Practice of Law Matters
Respondent's disbarment in Patrick I became effective on July 16, 1999. Thereafter, respondent opened an office in Ragley, Louisiana under the trade name "The Legal Research Center," and proceeded to represent and provide legal advice to clients.[2] One such client was Louis Burge, whom respondent represented in connection with a worker's compensation claim. Respondent provided legal advice to Mr. Burge and attempted to negotiate a settlement on his behalf in 2000. Likewise, in 2000, Horace Douglas retained respondent to represent him in a criminal matter. Mr. Douglas paid respondent $1,000 for the representation.
The ODC alleges that respondent's conduct in the Burge and Douglas matters constitutes the unauthorized practice of law, which is a crime pursuant to La. R.S. 37:213.[3] The ODC further alleges that *967 respondent violated the following provisions of the Rules of Professional Conduct: Rules 5.5(a) (engaging in the unauthorized practice of law), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).

DISCIPLINARY PROCEEDINGS
As previously noted, the ODC filed formal charges against respondent in 2004. The ODC sought the imposition of permanent disbarment for respondent's misconduct. Respondent answered the formal charges and denied any misconduct. This matter then proceeded to a formal hearing on the merits.

Hearing Committee Report
Considering the evidence and testimony presented at the hearing, the hearing committee made the following findings of fact and law:
1. Corinthian Smith retained respondent to represent his daughter on a misdemeanor filed in the Sulphur City Court, Ward 4.
2. Respondent told Mr. Smith that his daughter faced a felony charge. This was an intentional act of deception.
3. Respondent knowingly misrepresented the nature and severity of the charge to Mr. Smith.
4. Respondent quoted a fee to Mr. Smith of $2,500, which was to have included representation in the pending charge, the payment of any fines or costs resulting therefrom, and the preparation of an expungement.
5. Respondent told Mr. Smith that he had talked to the FBI and obtained a reduction in the charge to a misdemeanor. This was an intentional act of deception.
6. Respondent knowingly misrepresented his efforts on behalf of Mr. Smith's daughter. No such contact was made, nor would it have had any impact on the charge faced by his client if it had taken place. Respondent performed no services for his client in the Smith matter, other than to stand with his client at the time of her guilty plea.
7. The sentence obtained by Mr. Smith's daughter is consistent with that to be rendered for similarly situated but unrepresented defendants in Sulphur City Court.
8. The fee charged for respondent's services in the Smith matter was grossly excessive, constituting a violation of Rule 1.5.
9. Respondent's deception of Mr. Smith constitutes a violation of Rule 8.4(c).
10. Respondent's failure to refund the unearned portion of his fee to Mr. Smith constitutes a violation of Rule 1.5.
11. While disbarred by the Louisiana Supreme Court, respondent represented Louis Burge in a worker's compensation claim, constituting a violation of Rule 5.5(a).
12. Respondent acted in the manner of an attorney on behalf of Mr. Burge in his communications with the adjuster assigned the Burge claim and intentionally engaged in the unauthorized practice of law in violation of La. R.S. 37:213.
13. Respondent's conduct in the Burge matter involved dishonesty, fraud, deceit, and misrepresentation in violation of Rule 8.4(c).

*968 14. After his disbarment, respondent held himself out as the president of "The Legal Research Center, a Professional Consultant Corporation, Inc."
15. Respondent was contacted by Horace Douglas, an inmate at Winn Correctional Center seeking legal services.
16. Respondent accepted a fee of $1,000 from the family of Horace Douglas to assist him in the preparation of an out of time criminal appeal or application for post conviction relief.
17. Despite respondent's testimony that the Legal Research Center provided only educational services, documents introduced by respondent as Exhibits R.1 and R.2 confirmed that it provided legal services such as legal analysis, legal writing and litigation.
18. In correspondence to Mr. Douglas and his mother, respondent expressed opinions with regard to the validity of certain claims for post conviction relief in violation of Rule 5.5(a) and La. R.S. 37:213.
19. Respondent specifically held himself out as an attorney to Horace Douglas and his mother, constituting conduct involving dishonesty, fraud, deceit, and misrepresentation in violation of Rule 8.4(c).
Based on these findings, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation
The disciplinary board generally accepted the hearing committee's factual findings, and agreed that respondent violated the Rules of Professional Conduct as charged. The board determined that respondent violated duties owed to his clients, the public, and the legal profession. His actions were intentional, and the amount of actual injury is significant. Respondent converted the unearned fees of Mr. Smith and Mr. Douglas, and they have been deprived of these funds for lengthy periods of time. Moreover, by practicing law after his disbarment, respondent harmed Mr. Burge, Mr. Douglas, and the legal system. He jeopardized both individuals' legal matters by practicing law when he was not authorized to do so.
The board determined that the following aggravating factors are supported by the record: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, bad faith obstruction of the disciplinary process, substantial experience in the practice of law, and indifference to making restitution. The board found no mitigating factors are present.
Based on these findings, the board recommended that respondent be permanently disbarred. The board also recommended that respondent make the appropriate restitution to Mr. Smith and Mr. Douglas, and that he be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record *969 to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record in this matter reveals that respondent failed to return unearned fees, engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation, and practiced law after he was disbarred by this court. This conduct violated the Rules of Professional Conduct as charged in the formal charges.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
It is well settled in the jurisprudence that the unauthorized practice of law by a suspended or disbarred attorney is a serious violation of the professional rules. Disbarment is clearly appropriate for such misconduct. However, in their respective reports, the hearing committee and the disciplinary board have concluded that respondent's offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
For purposes of the instant case, Guidelines 1, 8, and 9 are relevant. Those guidelines detail the following conduct:
GUIDELINE 1. Repeated or multiple instances of intentional conversion of client funds with substantial harm.
GUIDELINE 8. Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.
GUIDELINE 9. Instances of serious attorney misconduct or conviction of a serious crime, when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime. Serious crime is defined in Rule XIX, Section 19. Serious attorney misconduct is defined for purposes of these guidelines as any misconduct which results in a suspension of more than one year.
Guideline 1 is clearly applicable to this case, as respondent's failure to refund unearned fees paid by his clients resulted in a conversion of those funds to the detriment of his clients. Likewise, Guideline 8 is implicated by respondent's failure to cease the practice of law after he was disbarred in 1999. Finally, respondent's *970 conduct falls under Guideline 9. His unauthorized practice of law is unquestionably serious attorney misconduct and was preceded by his disbarment for prior instances of serious attorney misconduct.
In In re: Jefferson, 04-0239 (La.6/18/04), 878 So.2d 503, we addressed a case in which the attorney engaged in the unauthorized practice of law. In concluding the attorney must be permanently disbarred, we stated:
Respondent has flouted the authority of this court by practicing law after being prohibited from doing so. In the face of this indisputable evidence of a fundamental lack of moral character and fitness, we can conceive of no circumstance under which we would ever grant readmission to respondent. Accordingly, he must be permanently disbarred.
As in Jefferson, respondent's actions reveal a fundamental lack of moral character and fitness. Given these facts, we can conceive of no circumstance under which we would ever grant readmission to respondent.
Accordingly, we will accept the disciplinary board's recommendation and impose permanent disbarment.

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, it is ordered that the name of Robert E. Patrick, Louisiana Bar Roll number 2044, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent shall provide accountings to his clients subject of the formal charges, and make full restitution of any unearned legal fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] In 2002, we considered a proceeding involving five counts of formal charges against respondent. These charges alleged serious misconduct by respondent, including the conversion of client and third-party funds. After considering the record, we found respondent guilty of violations which warranted disbarment; however, because the misconduct occurred during the same time frame as the misconduct at issue in Patrick I, we simply added the violations to respondent's record for consideration during any subsequent readmission proceeding. In re: Patrick, 01-1419 (La.3/15/02), 815 So.2d 804.
[2] In his testimony at the formal hearing in this matter, respondent claimed that the Legal Research Center is not a law office, but an educational service for lay people to teach themselves "how to access the law."
[3] La. R.S. 37:213 provides in pertinent part as follows:

A. No natural person, who has not first been duly and regularly licensed and admitted to practice law by the supreme court of this state, . . . shall:
(1) Practice law.
(2) Furnish attorneys or counsel or an attorney and counsel to render legal services.
(3) Hold himself or itself out to the public as being entitled to practice law.
(4) Render or furnish legal services or advice.
(5) Assume to be an attorney at law or counselor at law.
(6) Assume, use, or advertise the title of lawyer, attorney, counselor, advocate or equivalent terms in any language, or any phrase containing any of these titles in such manner as to convey the impression that he is a practitioner of law.
(7) In any manner advertise that he, either alone or together with any other person, has, owns, conducts, or maintains an office of any kind for the practice of law.
* * *
C. Any natural person who violates any provision of this Section shall be fined not more than one thousand dollars or imprisoned for not more than two years, or both.